**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ONYEJEKWE, *et al.*,

       Plaintiffs,

       v.

UBER TECHNOLOGIES, INC., *et al.*,

       Defendants.

Civil Action No. 19-10196 (ES) (MAH)

OPINION

**SALAS, DISTRICT JUDGE**

    Plaintiffs Chukwuemeka N. Onyejekwe ("Onyejekwe") and Stephanie Baez ("Baez") (collectively, "Plaintiffs") bring this action against Uber Technologies, Inc. (d/b/a Raiser, LLC) ("Uber") and Valentine Almonte Correa ("Correa") (collectively, "Defendants") for various causes of action in connection with an automobile incident that allegedly injured Plaintiffs. (D.E. No. 4 ("Amended Complaint" or "Am. Compl.")). Before the Court is Uber's motion to dismiss Plaintiffs' claim for punitive damages under Federal Rule of Civil Procedure 12(b)(6) and motion to strike certain allegations in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). (D.E. No. 12). The Court reviewed the parties' submissions in support and in opposition and decided the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, Uber's motion to dismiss is GRANTED, and its motion to strike is DENIED.

**I.    Background**

    Plaintiffs allege that on January 14, 2019, they requested an Uber to take them, along with their 17-month-old son, home from the son's swimming lesson at a local fitness center. (Am.

Compl. ¶ 25). When Correa, the driver, arrived at the Plaintiffs' pickup location, he was engaged in a conversation on his cellphone and was allegedly distracted. (*Id.* ¶¶ 26 & 27). Baez entered the vehicle while Onyejekwe attempted to strap his son in a car seat. (*Id.* ¶ 26). Before the child was secure in the car seat, and before Onyejekwe closed the car door, Correa began to drive and rolled over Onyejekwe's foot with his vehicle. (*Id.* ¶¶ 26 & 27). Plaintiffs requested that Correa reverse his car off of Onyejekwe's foot, which Correa did after about ten seconds. (*Id.* ¶ 27). Correa then "apologized profusely" and proceeded to take Plaintiffs and their son home. (*Id.* ¶ 29). As a result of the incident, Onyejekwe allegedly suffered multiple injuries, including, but not limited to, injuries to both of his feet and his back. (*Id.* ¶¶ 31–34).

Plaintiffs' Amended Complaint raises several causes of action under New Jersey state law including: (i) negligence; (ii) respondeat superior liability; (iii) negligent training; (iv) fraudulent misrepresentation; (v) negligent misrepresentation; (vi) emotional distress; (vii) loss of consortium; and (viii) punitive damages. (*Id.* ¶¶ 37–100).

## II.     Legal Standard

### A.     Motion to Dismiss

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations

pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, in deciding a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### B.  Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may, upon motion or sua sponte, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002) (internal quotation marks omitted). However, "[b]ecause of the drastic nature of the remedy, . . . motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Id.* (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).

**III.     Discussion**

    **A.     Motion to Dismiss**

First, Uber moves to dismiss Plaintiffs' punitive damages claim under Federal Rule of Civil Procedure 12(b)(6) for failure to plead the requisite level of misconduct under state law. Punitive damages may be awarded in limited circumstances as proscribed under New Jersey statute. *See* N.J. Stat. Ann. § 2A:15-5.12. The defendant's acts or omissions must have been "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *Id.* The statute defines "actual malice" as "an intentional wrongdoing in the sense of an evil-minded act." *Id.* § 2A:15-5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.*

A plaintiff cannot satisfy his burden of proof by "any degree of negligence including gross negligence." *Id.* § 2A:15-5.12; *see also In re Paulsboro Derailment Cases*, 704 F. App'x 78, 88 (3d Cir. 2017) (affirming dismissal of punitive damages claim and noting that if true, the allegations would amount to "negligence or even gross negligence"); *Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011) (agreeing with the district court's finding that plaintiff "failed to allege facts sufficient to demonstrate that the [d]efendants acted with the requisite malice or willful disregard to justify [plaintiff's] demand for punitive damages"); *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-5607, 2018 WL 1535289, at *9 (D.N.J. Mar. 29, 2018); *Higgins v. Route 17 Auto., LLC*, No. 11-6240, 2012 WL 3284846, at *3 (D.N.J. Aug. 10, 2012). Rather, to invoke punitive damages, conduct must occur with malice or "with knowledge of a high degree of probability of harm and reckless indifference to the consequences." *Smith v. Whitaker*, 734 A.2d 243, 254 (N.J. 1999) (quoting *Berg v. Reaction Motors Div.*, 181 A.2d 487, 496 (N.J. 1962)); *see*

*also In re Paulsboro*, 704 F. App'x at 87–88 (noting that even at the pleading stage, "[a] generalized allegation of a naked legal conclusion that someone acted 'willfully' or 'maliciously' cannot convert what otherwise is a state-court negligence suit into a federal diversity action for punitive damages").

Plaintiffs seemingly attempt to assert a standalone cause of action for punitive damages which is limited to the allegations set forth in paragraphs 92 through 101[1] in the Amended Complaint because, unlike their other claims, Plaintiffs did not incorporate all preceding allegations under their claim for punitive damages. (*Compare* Am. Compl. ¶¶ 37, 44, 52, 66, 71, 76 & 87, *with* ¶¶ 92–101). As a preliminary matter, however, the Court notes that "[p]unitive damages are a remedy ***incidental*** to [a] cause of action, not a substantive cause of action in and of themselves." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000) (emphasis added); *see also* N.J. Stat. Ann. § 2A:15–5.13(c) (providing that punitive damages may be awarded under New Jersey law only if compensatory damages have been awarded). Accordingly, the Court dismisses Count VIII for punitive damages because Plaintiffs improperly assert their request for punitive damages as a separate cause of action. *See Smith v. Covidien LP*, No. 19-11981, 2019 WL 7374793, at *10 (D.N.J. Dec. 31, 2019) (dismissing plaintiff's punitive damages claim because a standalone cause of action for punitive damages is not cognizable, and disregarding the defendant's argument that plaintiff insufficiently pled conduct to warrant such damages).

Despite Plaintiffs attempt to improperly fashion a standalone claim for punitive damages, the Court finds that the preceding claims and allegations in the Amended Complaint (Am. Compl. ¶¶ 1–91) do not support the inference that Uber—by its own conduct or under the doctrine of respondeat superior—acted maliciously or "with knowledge of a high degree of probability of

---

[1] The Court notes that Plaintiffs include two consecutive paragraphs numbered "100" under its claim for punitive damages. The Court will refer to the second allegation numbered "100" as "101" in this Opinion.

harm and reckless indifference to the consequences." *See Smith*, 734 A.2d at 254 (quoting *Berg*, 181 A.2d at 496)). Instead, Plaintiffs allege conduct that may, if true, amount to negligence or gross negligence.

For example, Plaintiff cannot recover punitive damages for any negligent or even grossly negligent conduct alleged against Uber. *See In re Paulsboro*, 704 F. App'x at 87–88 ("even gross negligence will not suffice to make punitive damages available"); (*see also* Am. Compl. ¶¶ 37–43 (negligence); 44–51 (respondeat superior liability premised on negligence); 52–65 (negligent training); 71–75 (negligent misrepresentation); 76–86 (emotional distress premised on Uber's negligence); & 87–91 (loss of consortium premised on negligence)). To the extent Plaintiffs allege a claim for fraudulent misrepresentation (Am. Compl. ¶¶ 66–70), the Court cannot reasonably infer, based on any of the allegations, that Uber's alleged conduct rises to the level that supports a finding of punitive damages such as malicious, willful or reckless behavior.[2] *See In re Paulsboro*, 704 F. App'x at 87–88; *see also McKenna v. Toll Bros.*, No. 14-6543, 2015 WL 1874236, at *3 (E.D. Pa. Apr. 23, 2015). For the reasons stated above, Uber's motion to dismiss Plaintiffs' claim for punitive damages is granted. Accordingly, Plaintiffs' claim for punitive damages is dismissed against Uber, *without prejudice*.

**B.     Motion to Strike**

To strike a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Tonka Corp.*, 836 F.Supp. at 217. In instances where a party moves to strike allegations, courts will not grant such motions unless the movant establishes that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the

---

[2]     In any event, to the extent Plaintiffs seek punitive damages under their claim for fraudulent misrepresentations, the Court notes that this claim is subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *DiMare v. MetLife Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. 2010).

allegations confuse the issues." *Garlanger*, 223 F.Supp.2d at 609 (quoting *Tonka Corp.*, 836 F.Supp. at 217); *see also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 706–07 (D.N.J. 2013). "When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F.Supp. 1279, 1292 (D. Del. 1995) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 695–96 (2d ed. 1990)). Accordingly, under Rule 12(f)'s "strict" standard, "only allegations that are *so unrelated* to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004) (emphasis added) (internal quotation and citation omitted); *see also Weske*, 934 F. Supp. 2d at 706–07. When the allegations challenged involve factual disputes, a Rule 12(f) motion will be denied because of the inherent "practical difficulty of deciding cases without a factual record." *Tonka Corp.*, 836 F.Supp. at 217. Moreover, "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." *Kim v. Baik*, No. 06-3604, 2007 WL 674715, at *5 (D.N.J. Feb. 27, 2007) (quoting *River Road Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)).

Here, Uber moves to strike over thirty-five paragraphs in the Amended Complaint, which contains 101 total paragraphs. (*See* D.E. No. 12-2 at 19 (requesting that this Court strike paragraphs 4–13, 41–43, 50, 53–65, 67–69 and 93–101 of the Amended Complaint)). Uber proffers three bases to dismiss these allegations, including (i) allegations that relate to and disparage Uber's business model (D.E. No. 12-2 at 13 (citing Am. Compl. ¶¶ 8–13, 50, 53–65, 67–69 & 93–101)); (ii) allegations that reference cellphone statistics and disparage Uber's operations (D.E. No. 12-2 at 14 (citing Am. Compl. ¶¶ 42, 43, 50, 61–64 & 95–101)); and (iii)

allegations that are argumentative, speculative, immaterial and redundant in light of Plaintiffs' negligence claims (D.E. No. 12-2 at 16 & 18 (citing Am. Compl. ¶¶ 4–13, 41, 50, 53–65, 67–69, 93–101)).

Uber contends that numerous paragraphs should be stricken from the Amended Complaint because they disparage Uber's business model and operations. (D.E. No. 12-2 at 13 (citing Am. Compl. ¶¶ 8–13, 50, 53–65, 67–69 & 93–101); D.E. No. 12-2 at 14 (citing Am. Compl. ¶¶ 42, 43, 50, 61–64 & 95–101)). However, the Court finds that most of these paragraphs actually relate to the present controversies. Here, Plaintiffs claim that Uber acted negligently by failing to enact safety policies and train its drivers on safety issues such as pick-up and drop-off procedures and cellphone use while driving. (Am. Compl. ¶¶ 52–65 (negligent training claim)). Plaintiffs also assert a claim against Uber under the doctrine of respondeat superior for Correa's conduct in his capacity as an Uber driver. (*Id.* ¶¶ 44–51 (respondeat superior claim)). Thus, paragraphs that relate to or speak of Uber's policies, employment and training processes, or alleged lack thereof, (*id.* ¶¶ 9–13, 50, 53–60, 62–65, 67–69, 93–94 & 97–101) are undoubtedly related to the controversies at hand. *See Garlanger*, 223 F.Supp.2d at 609. Similarly, the allegations concerning a lawsuit about Uber's alleged misrepresentations with respect to its screening of drivers (Am. Compl. ¶¶ 8 & 68) are related to Plaintiffs' misrepresentation claims which generally allege that Uber falsely represented its safety standards to passengers. (*See id*. ¶¶ 66–75 (fraudulent and negligent misrepresentation claims)). Although paragraphs 61, 95 and 96 of the Amended Complaint do not concern Uber specifically,[3] these allegations "serve to achieve a better

---

[3] Paragraph 61 alleges that "several studies" have shown "the dangers of distracted driving while talking on a cell phone" and claims that certain states have banned cell phone use while driving, which has reduced accidents. It continues to allege that this "inexpensive safeguard . . . is even more paramount when you have a higher duty of care (common carrier) such as transporting another person safely in exchange for money." (*Id.* ¶ 61). Paragraphs 95 and 96 of the Amended Complaint respectively allege that "[t]he National Security Council reports that cellphone use while driving leads to 1.6 million crashes per year" and "as earlier stated, several cities have begun to restrict the use of cellphones while transporting passengers."

understanding of [Plaintiffs'] claims," namely, that Uber should consider current developments with respect to cellphone use while driving in its design and implementation of training and safety protocols. *See Del. Health Care, Inc.*, 893 F.Supp. at 1292 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 695–96 (2d ed. 1990)).

For the same reason stated above, the Court finds Uber's argument regarding allegations that relate to cellphone statistics (specifically paragraphs 61, 95, 96 & 97 of the Amended Complaint) unavailing because these allegations help achieve a better understanding of the present claims. *Id.*; (*see* D.E. No. 12-2 at 14–16). Moreover, as stated above, the remaining allegations that Uber categorizes as disparaging to its operations (Am. Compl. ¶¶ 42, 43, 50, 62–64 & 98–101), are related to the Plaintiffs' specific incident and causes of action at issue, including claims for negligence, negligent training, and fraudulent and negligent misrepresentations. *See Garlanger*, 223 F.Supp.2d at 609.

Finally, Uber argues that various allegations are argumentative, speculative, immaterial and redundant in light of Plaintiffs' claims for negligence. (D.E. No. 12-2 at 16 & 18 (citing Am. Compl. ¶¶ 4–13, 41, 50, 53–65, 67–69, 93–101)). For the reasons previously stated, the Court finds that these allegations pertain to the controversies at issue and help the Court understand the Plaintiffs' claims. In addition, many of these allegations also involve factual disputes that are not ripe for dismissal at this juncture. *See Tonka Corp.*, 836 F.Supp. at 217. Overall, the Court finds that the paragraphs Uber seeks to strike are not "so unrelated to plaintiffs' claims as to be unworthy of any consideration." *See Johnson*, 334 F.Supp.2d at 809 (quoting *Becker v. Chicago Title Ins. Co.*, No. 03-2292, 2004 WL 228672, at *6 (E.D. Pa. Feb. 4, 2004)); *see also Weske*, 934 F. Supp. 2d at 706–07. Accordingly, Uber's motion to strike is denied.

## IV.     Conclusion

For the foregoing reasons, the Court GRANTS Uber's motion to dismiss Count VIII of the Amended Complaint. Accordingly, Plaintiffs' claim for punitive damages against Uber is dismissed *without prejudice*. Further, the Court DENIES Uber's motion to strike paragraphs 4–13, 41–43, 50, 53–65, 67–69 and 93–101 of the Amended Complaint. To the extent Plaintiffs can cure the deficiencies outlined in this Opinion, it may do so in a second amended complaint within 30 days.

An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
